IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


**LILLIE STRONG**                                                                                   **PLAINTIFF**

**vs.**                                                          **CIVIL ACTION NO. 3:10cv006-SAA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**


### MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Lillie Strong for disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act.[1] Plaintiff protectively filed applications for SSI, DIB and for a period of disability on November 21, 2006, alleging disability beginning November 2, 2006. Docket 3, Ex. 1, p. 12.[2] Plaintiff's claim was denied initially on May 11, 2007 (Ex. 1, p. 54-57) and on reconsideration on June 21, 2007. Ex. 1, p. 47-48. She filed a written request for hearing on July 20, 2007 (Ex. 1, p. 46) and was represented by Thomas U. Reynolds at the hearing held on April 21, 2009. Ex. 1, p. 12. The Administrative Law Judge (ALJ) issued an unfavorable decision on May 21, 2009 (*Id.* at 12-

---

[1] Plaintiff's Brief only indicates that plaintiff is seeking an appeal from a denial of her application for a period of disability and disability insurance benefits, but plaintiff's Complaint also included the Commissioner's denial of supplemental security income payments. Therefore, the court will consider the denial of all benefits originally applied for by plaintiff.

[2] The Administrative Record in this case is attached to defendant's Answer at Docket Entry 3. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 3.

24) and the Appeals Council denied plaintiff's request for a review. Ex. 1, p. 4-6. Plaintiff timely filed the instant appeal from the decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on April 15, 1963, and completed the eighth grade. Docket 8, p. 4. She was 43 years old at the time of the application and had changed age category to a younger individual, age 46, at the time of the ALJ's hearing and decision. Ex. 1, p. 23. Her previous employment was as janitor. *Id.* Plaintiff contends that she became disabled before her application for SSI and DIB due to left shoulder arthritis, cervical spine degenerative disc disease, obesity, depression, sarcoidosis, asthma, carpal tunnel disease, and lupus. The court concludes that the objective evidence does not support a finding of disability under the Social Security Act (SSA).

The ALJ determined that plaintiff suffered from "severe" impairments, including "left shoulder advanced degenerative arthritis status post surgery, cervical spine degenerative disc disease, and obesity" (Ex. 1, p. 14), and non-severe impairments that included hypertension, right carpal tunnel release, sarcoidosis, asthma, and lupus or rheumatoid arthritis. The ALJ found that these non-severe impairments "impose no more than a minimal impact on the claimant's ability to perform work-related activity or are not medically determinable impairments." Ex. 1, p. 16.

The ALJ performed a thorough analysis of all of plaintiff's alleged impairments, including those that he determined were not severe or were not medically determinable impairments. He noted, for example, that when plaintiff took her blood pressure medication as directed, her blood pressure readings were within normal limits. Ex. 1, p. 16. As to her carpal tunnel complaints, the ALJ noted that plaintiff's "right hand symptoms significantly improved with surgery," and there were "no objective findings to support right hand/wrist impairments." *Id.* Additionally, plaintiff did not see her treating neurosurgeon regarding her carpal tunnel after September 2003. *Id.* As to plaintiff's claimed impairment of Beck's sarcoidosis and asthma, there was only one mention in the record of any such diagnoses, all of the objective testing demonstrated clear lungs and no evidence to support either diagnosis, nor did it appear that plaintiff ever received treatment for either sarcoidosis or asthma. *Id.* The ALJ reviewed plaintiff's records and found that they failed to show any definitive diagnoses with regard to her alleged lupus and rheumatoid arthritis (*id.*); as he noted, records of UTCI Grenada Clinic indicate that "she had abnormal labs discussed with Dr. Yunus for possible Sjogren versus systemic lupus erythematosus," but "[t]here are no documented signs of symptoms of lupus or rheumatoid arthritis in the record." *Id.* at 16-17.

The ALJ held that plaintiff's 'medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." Ex. 1, p. 17. He pointed out that there is no mention of depression in plaintiff's medical records, and she has received no mental health treatment. *Id.* In determining that plaintiff's depression is non-severe and does not meet a listed impairment, the ALJ properly evaluated plaintiff's claim under the "paragraph B" criteria and concluded that

3

"[b]ecause the [plaintiff's] medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))." Ex. 1, p. 17.

After analyzing each individual impairment alleged, the ALJ found that plaintiff's impairments, singly or on combination, did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20C.F.R. 404.1525, 404.1526, 416.925 and 416.926). Ex. 1, p. 17. He considered testimony by the vocational expert [VE] at the hearing and, reviewing the record as a whole, determined that plaintiff retains the Residual Functional Capacity (RFC) to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except her ability to use the left upper extremity is limited to 50 percent, but she retains good or full function of the right upper extremity." Ex. 1, p. 19. Although he found that plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but he nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Ex. 1, p. 20. Additionally, the ALJ questioned the plaintiff's credibility as to her limitations based upon "the inconsistencies in her alleged inability to perform household chores and the activities of daily living reported to Dr. Whelan . . ." Ex. 1, p.21. The ALJ held that the plaintiff is unable to perform her past relevant work, but because there are jobs that exist in significant numbers in the national economy that plaintiff can perform, she is not disabled under the Social Security Act. Ex. 1, p.23.

Plaintiff contends that the ALJ erred when he failed to consider the diagnoses of

4

depression, anxiety, sarcoidosis, chronic pain, and symptoms and diagnosis of lupus as severe impairments; and that he substituted his own opinion for the medical evidence of record.

## II. DISCUSSION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude plaintiff is disabled if she proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[7] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8] At step five, the burden shifts to the

---

[3]*See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[4]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[5]20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[6]20 C.F.R. §§ 404.1520(b), 416.920 (2003).

[7]20 C.F.R. §§ 404.1520(b), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[8]20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

5

Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has the limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a

---

[9]20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

[10]*Muse*, 925 F.2d at 789.

[11]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### A. Whether the ALJ erred in considering plaintiff's impairments

Plaintiff contends the ALJ erred by not giving proper consideration to plaintiff's impairments that he found to be not "severe." The ALJ found that plaintiff 's left shoulder advanced degenerative arthritis status post surgery, cervical spine degenerative disc disease, and obesity were severe, but held that her remaining alleged impairments were not. Ex. 1, p. 20-21. Despite plaintiff's claim of error, however, the ALJ did properly consider all of her impairments. In fact, the ALJ performed a thorough analysis of each of the alleged impairments. For instance, with regard to plaintiff's right carpal tunnel release, the ALJ noted that the plaintiff had surgery in 2003, before her alleged disability onset date, and plaintiff's symptoms were significantly improved by the surgery. Ex. 1, p. 16. She did not return to her treating neurosurgeon after 2003 and a nerve conduction study performed in December of 2006 was negative. During a consultative examination performed by Dr. Adams, plaintiff had full range of motion of the fingers, wrists and elbows and only mildly limited left grip. Additionally, she displayed good bilateral manual dexterity. *Id.*

Similarly, plaintiff alleges that the ALJ failed to properly consider plaintiff's lupus. Docket 8, p. 9. Plaintiff argues that "several acceptable medical sources" have confirmed this diagnosis, but does not advise the court of the identity of these "acceptable medical sources."

The only "medical source" who confirmed this diagnosis is a nurse practitioner (Docket 9, p. 9), and a nurse practitioner is not an acceptable medical source as contemplated by the regulations. 20 C.F.R. § 404.1513(a).

The ALJ properly considered each of plaintiff's many alleged impairments, including her depression and anxiety. He considered all four broad functional areas required in the disability regulations 20 C.F.R. §§ 404.1520a(c), 416.920a(c), also known as "paragraph B" in evaluating the severity of plaintiff's depression and anxiety. Ex. 1, 17. He noted that she had mild restriction in her ability to perform daily living activities in that she is able to take care of her personal needs and prepares meals for herself. Ex. 1, p. 17. Additionally, she helps take care of her grandchildren, washes dishes, folds clothes, pays bills, etc. *Id.* The ALJ also noted that plaintiff has mild restriction in her ability to maintain social functioning, mild difficulties in her ability to maintain concentration, persistence or pace, and has not experienced any episodes of decompensation. Ex. 1, p. 18. As a result, the ALJ found "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1))." *Id.* at 18.

Plaintiff's argument that the ALJ did not properly consider all of plaintiff's impairments is without merit. The ALJ properly analyzed each alleged impairment and compared the record evidence to each listing, but ultimately found that the record evidence failed to demonstrate any listing. In passing, plaintiff alleged that the ALJ failed to conduct the required "function-by-function assessment" of her abilities. Docket 8, p. 10. However, the ALJ properly addressed the plaintiff's ability to perform sustained work activities and detailed record evidence to support his

8

conclusions. Therefore, this argument is similarly without merit.[13]

### B. Whether the ALJ erred by substituting his opinion for the medical evidence

Plaintiff alleges that the ALJ erred by substituting his opinion for the medical evidence in the record. Docket 8, p. 13. Plaintiff's primary example is the ALJ's "substitution of 50% use of left arm for totally consistent findings that plaintiff's ability to reach in all directions was 'limited.'" *Id.* Plaintiff points to a diagnosis of a "frozen shoulder" as evidence that the ALJ substituted his opinion for that of treating physicians. Plaintiff correctly asserts that an ALJ is not permitted to substitute his own opinions for opinions of physicians *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). However, the ALJ in this case did not substitute his opinion for those of plaintiff's physicians. At most, the ALJ placed an additional restriction on plaintiff's ability to perform work activities that would operate in plaintiff's favor in determining disability. The court cannot locate anything in the record to support the ALJ's determination that the plaintiff has a 50% limitation on her left arm, but finds this was harmless error on the ALJ's part. The Fifth Circuit has held that "procedural perfection in administrative proceedings is not required. [The] court will not vacate a judgment unless the substantial rights of a party have been affected." *Barratt v. Astrue*. 2008 U.S. App. LEXIS 12185, *7 (5th Cir. 2008), citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Here, the ALJ's determination that plaintiff suffers from 50% impairment in the use of her left arm is not inconsistent with the medical records and certainly does not affect the plaintiff's rights.

As another example of the ALJ's substitution of his own opinions for the treating

---

[13] In one sentence, plaintiff argues that the ALJ failed to develop the record, and selectively read the record and substituted his own opinion for those of the medical sources. Docket 8, p. 10. However, the plaintiff failed to present any evidence to support the first two assignments of error, and therefore the Court assumes that plaintiff abandoned these theories.

physician's opinions, plaintiff points to the fact that the ALJ found plaintiff's depression to cause only mild limitations while the physician's opinion finds moderate limits. Docket 8, p. 14. Plaintiff asserts that the ALJ failed to consider the limits of plaintiff's concentration based upon either depression of pain. *Id.* However, the ALJ's decision clearly states that he did give consideration to plaintiff's level of concentration in evaluating the paragraph B requirements of the listing. Ex. 1, p. 18. The ALJ noted that plaintiff "watches television, prepares meals for herself, handles a savings account, uses a check book, drives occasionally, reads, and attends church." *Id.* He considered all of these activities, which the plaintiff stated she performs, in determining whether her concentration is markedly impaired as required by Listing 12.04. As such, this argument is also without merit.

### III. CONCLUSION

After a review of the evidence presented to the ALJ, this court is of the opinion that the ALJ's opinion was supported by substantial evidence and must be affirmed. The ALJ thoroughly analyzed each of plaintiff's alleged impairments, even those for which no support appeared in the record. He properly weighed the evidence from plaintiff's treating physicians and evaluated plaintiff's impairments under all of the necessary steps. The ALJ's conclusion that the physical and mental impairments alleged during the administrative process do not constitute a disability is clearly supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

This, the 6th of December, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE